FILED
CLERK, U.S. DISTRICT COURT

8/25/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ DD ___ DEPUTY

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
LUCY B. JENNINGS (Cal. Bar No. 301977)
Assistant United States Attorney
International Narcotics, Money Laundering,
& Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5487
    Facsimile: (213) 894-0141
    E-mail:   lucy.jennings@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-cr-00370-VAP-2 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SANG BUM NOH |
| v. | |
| SANG BUM NOH, aka "Ed Noh," | |
| Defendant. | |

1.   This constitutes the plea agreement between SANG BUM NOH ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of money laundering, customs fraud, and tax violations by defendant, through his work at AMBIANCE U.S.A., INC. ("Ambiance"). This agreement is limited to the USAO and except as explicitly set out below, cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and Nine of the Information in the form attached hereto as Exhibit A or a substantially similar form, charging defendant with Conspiracy, in violation of Title 18, United States Code, Section 371 (Count One); and Making and Subscribing to a False Tax Return, in violation of Title 26, United States Code, Section 7206(1) (Count Nine); and included forfeiture allegations.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at least 10 calendar days before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments as determined by the USAO after receiving a full and complete Financial Disclosure Statement by defendant.

h.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.   Complete the Financial Disclosure Statement provided by the USAO and, within 30 days of signing this plea agreement, deliver a copy of the signed statement, along with all required supporting documentation, by email to: usacac.FinLit@usdoj.gov or by mail to:

United States Attorney's Office

Financial Litigation Section, Pre-Judgment Group

300 N. Los Angeles St., Suite 7516

Los Angeles, CA 90012

j.   Authorize the USAO to obtain reports from consumer/credit reporting agencies immediately after signing this plea agreement.

k.   Sign the Withdrawal of Administrative Claims agreement prepared by the United States Customs and Border Protection.

3.   Defendant further agrees that $35,227,855.45 of the funds seized by law enforcement officials on September 20, 2014 as part of the investigation into defendant and Ambiance (the "Seized Funds") shall be applied to the restitution award ordered by the Court.

PAYMENT OF TAXES AND CUSTOMS OWED

4.   Defendant admits that defendant received $13,422,908 of unreported income for the calendar year 2011 and $6,548,442 in unreported income for the calendar year 2012.  Defendant is liable for and gives up any right to contest the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2011 and 2012.

5.    Prior to the time of sentencing, defendant agrees to sign IRS Closing Agreements, stipulating to taxes and penalties owed and permitting the Internal Revenue Service to assess and collect the total sum of $11,406,106.73 owed for the defendant's tax year 2011 and $5,400,305.31 for defendant's tax year 2012, and will pay the sums owed, which include interest, pursuant to the schedule set out in Exhibit E.

6.    Defendant further agrees:

a.    That defendant will not, after signing the Closing Agreements, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns associated with the Closing Agreements filed in connection with this plea agreement.

b.    That defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

7.    Defendant admits that the total amount of lost revenue plus interest owed by defendant to the United States Customs and Border Protection arising from conduct described in the attached statement of facts (Exbihit B) is $18,421,443.41.

<u>FORFEITURE AND FINANCIAL ACCOUNTABILITY</u>

8.    Defendant further agrees:

a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, and involved in the illegal activity to which defendant is pleading guilty, including but not limited to $1,104,997.55 in U.S.

4

funds seized by law enforcement officials on September 10, 2014 (the "Forfeitable Property").

b.     To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c.     To take whatever steps are necessary to pass to the United States clear title the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.     Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further agrees to waive any and all rights to further notice regarding the disposition of the Forfeitable Property.

e.     Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.     Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g.     To the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the amount of $81,564,856.08, to be paid as outlined in Exhibit E, which sum defendant admits is forfeitable due to the violations described in

the factual basis of the plea agreement.  Defendant understands that the money judgment of forfeiture is part of defendant's sentence and is separate from any fines or restitution that may be imposed by the Court.

h.   That the forfeiture of the Forfeitable Property and entry of the money judgment of forfeiture shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

i.   With respect to any criminal forfeiture or money judgment ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture and money judgment at sentencing, and incorporation of the forfeiture and money judgment in the judgment; (2) all constitutional and statutory challenges to the forfeiture and/or money judgment (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property or money judgment in any proceeding on any grounds including, without limitation, that the forfeiture and/or money judgment constitute an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Property and money judgment are part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

9.   The parties agree that the total forfeitable amount in this case is $82,669,853.63.

6

10. The USAO agrees that $35,227,855.45 of the Seized Funds shall be applied to the restitution award ordered by the Court, which includes the amounts in paragraphs 5 and 7. If such an order is made, upon sentencing, the government will transmit $35,227,855.45 of the Seized Funds to the Clerk of the Court to be applied to this restitution award.

### THE USAO'S OBLIGATIONS

11. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d. Except for criminal tax violations not otherwise described in the attached statement of facts, not further criminally prosecute defendant for violations arising out of defendant's conduct described in the agreed-to factual basis attached hereto as Exhibit B. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing, the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after

7

consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

NATURE OF THE OFFENSES

12. Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true:

a. Beginning on an unknown date, and continuing until on or about September 10, 2014, there was an agreement between two or more persons to:

i. Knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, entering goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

ii. Knowingly and willfully enter and introduce goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542;

iii. Knowingly, willfully, and with the intent to defraud the United States, pass or cause to pass false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

iv. Knowingly cause Ambiance to fail to file currency transaction reports for a trade or business as required by Title 31, United States Code, Section 5331(a), in violation of Title 31, United

States Code, Section 5324(b)(1), and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324((d)(2); and

v.    Knowingly and willfully make and subscribe tax returns, which were verified by a written declaration made under penalty of perjury, and which defendant NOH did not believe to be true and correct as to a material matter, in violation of Title 26, United States Code, Section 7206(1).

b.    Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.    One of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy.

13.    Defendant understands that to be guilty of Transporting Funds to Promote Unlawful Activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A), which is one of the objects of the conspiracy charged in Count One, the following must be true:

a.    Defendant transported money from a place in the United State to or through a place outside the United States; and

b.    Defendant acted with the intent to promote the carrying on of a specified unlawful activity.

14.    Defendant understands that to be guilty of Entry of Goods by Means of False Statements, in violation of Title 18, United States Code, Section 542, which is one of the objects of the conspiracy charged in Count One, the following must be true:

a.    Merchandise was imported;

b.    Defendant entered or introduced such merchandise into the commerce of the United States;

9

c.   Defendant did so by means of a fraudulent invoice, which defendant knew was fraudulent; and

d.   The invoices had a natural tendency to influence, or were capable of influencing, action by the United States.

15.   Defendant understands that to be guilty of Passing False and Fraudulent Papers Through Customhouse, in violation of Title 18, United States Code, Section 545, which is one of the objects of the conspiracy charged in Count One, the following must be true:

a.   Defendant knowingly passed invoices or other documents through a customhouse of the United States;

b.   Defendant knew that the invoices or documents were false or fraudulent;

c.   Defendant acted willfully with intent to defraud the United States; and

d.   The invoices or documents had a natural tendency to influence, or were capable of influencing, action by the United States.

16.   Defendant understands that to be guilty of Causing the Failure to File Report of Currency Transaction in a Non-Financial Trade or Business, in violation of Title 31, United States Code, Section 5324(b)(1), which is one of the objects of the conspiracy charged in Count One, the following must be true:

a.   Ambiance was a non-financial trade or business;

b.   Ambiance, in the course of such trade or business, received more than $10,000 in currency in one transaction (or two or more related transactions);

10

c.    Defendant caused Ambiance to fail to file a report with the Financial Crimes Enforcement Network as required under 31 U.S.C. § 5331 et seq.;

d.    Defendant did so willfully and for the purpose of evading the reporting requirement; and

e.    Defendant did so while engaged in a pattern of illegal activity involving more than $100,000 in a 12-month period.

17.    Defendant further understands that for defendant to be guilty of Making and Subscribing to a False Tax Return, in violation of Title 26, United States Code, Section 7206(1), which is the crime charged in Count Nine and one of the objects of the conspiracy charged in Count One, the following must be true:

a.    Defendant signed and filed a tax return for the year 2011 that he knew contained false information as to a material matter;

b.    The return contained a written declaration that it was signed subject to penalty of perjury;

c.    In filing the false tax return, the defendant acted willfully and with the specific intent to violate the law; and

d.    The false information was material in that it had a natural tendency to influence, or was capable of influencing, the decisions and activities of the Internal Revenue Service.

PENALTIES AND RESTITUTION

18.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: five years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or

11

gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

19. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1) is: three years' imprisonment; a one-year period of supervised release; a fine of $100,000; and a mandatory special assessment of $100.

20. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: eight years' imprisonment; a one-year period of supervised release; a fine of $350,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

21. Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

22. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

12

suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties agree that the applicable amount of restitution is approximately $35,227,855.45.

23.  Defendant and the USAO agree to jointly request the Court to order restitution to be paid according to the schedule set out in Exhibit E.  The government is not precluded from pursuing any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

24.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

25.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or

13

ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

26.  Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

### FACTUAL BASIS

27.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts attached as Exhibit B is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 29 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

14

SENTENCING FACTORS

28.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

29.  Defendant and the USAO agree that for purposes of the Sentencing Guidelines, both counts should be grouped together pursuant to U.S.S.G. § 3D1.2.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

COUNT ONE:  CONSPIRACY – Object: Failure to File 8300s

| Base Offense Level: | 6 | U.S.S.G. § 2S1.3(a)(2) |
|---|---|---|
| Specific Offense Characteristic: Value of funds exceeds $9.5 million | +20 | U.S.S.G. § 2B1.1 |
| Specific Offense Characteristic: Pattern of Unlawful Activity > $100K | +2 | U.S.S.G. § 2S1.3(b)(2) |

COUNT ONE:  CONSPIRACY – Object: Customs Fraud

| Base Offense Level: Tax Loss > $9.5 million | 26 | U.S.S.G. § 2S1.1(a)(1); 2T3.1(a)(1); 2T4.1 |
|---|---|---|

15

COUNT ONE:  CONSPIRACY - Object: Money Laundering

| Base Offense Level:<br>Tax Loss > $9.5 million | 26 | U.S.S.G. § 2S1.1(a)(1);<br>2T3.1(a)(1); 2T4.1 |
|---|---|---|

COUNT NINE:  TAX

| Base Offense Level: | 24 | U.S.S.G. §§ 2T1.1(a)(1);<br>2T4.1(J) (Tax Loss > $3.5M) |
|---|---|---|
| Specific Offense Characteristic: Failed to report > $10K | +2 | U.S.S.G. § 2T1.1(b)(1) |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 9(c)) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 43 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

30. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

31. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

32. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

    f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

17

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

33.    Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offenses to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offenses to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the information alleging those offenses; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offenses to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

### WAIVER OF APPEAL OF CONVICTION

34.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached hereto is insufficient to support defendant's pleas of guilty.

### WAIVER OF APPEAL AND COLLATERAL ATTACK

35.    Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an

18

offense level of 25 and the criminal history calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) any forfeiture imposed by the Court, provided it is no more than $82,669,853.63 and follows the payment schedule set out in Exhibit E; (d) the amount and terms of any restitution order, provided it requires payment of no more than $35,227,855.45 and follows the payment schedule set out in Exhibit E; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

36. Provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 25 and the criminal history calculated by the Court, defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited

19

to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

37. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above; and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 25 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

38. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

20

EFFECTIVE DATE OF AGREEMENT

39. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

40. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

41. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

21

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

42.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

43.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 29 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

44.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

45.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

23

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

46.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____     July 6, 2020
LUCY B. JENNINGS                     _____
Assistant United States Attorney     Date

_____     7/6/2020
SANG BUM NOH, aka "Ed Noh"           _____
Defendant                            Date

_____     July 6, 2020
BENJAMIN GLUCK, ESQ.                 _____
Attorney for Defendant               Date
SANG BUM NOH

24

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. This agreement has been read to me in Korean, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _____ 7/6/2020 _____
SANG BUM NOH                           Date
Defendant
Defendant

## CERTIFICATION OF INTERPRETER

I, _____, am fluent in the written and spoken English and Korean languages.  I accurately translated this entire agreement from English into Korean to defendant SANG BUM NOH on this date.

_____          _____
INTERPRETER                                                      Date


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SANG BUM NOH's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          July 6, 2020
BENJAMIN GLUCK, ESQ.                                  Date
Attorney for Defendant
SANG BUM NOH

26

# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California  )
         )  S. S.
Los Angeles County )

   I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Plea Agreement for Defendant INDIVIDUAL1 re: United States of America v. Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California            )
                               )        S. S.
Los Angeles County             )

     I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Information re: United States of America v. Company and Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION
## and
# DECLARATION

State of California          )
                             )        S. S.
Los Angeles County           )


       I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit B Statement of Facts re: United States of America v. Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.


Executed on July 1, 2020


Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com


Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California       )

                  )      S. S.

Los Angeles County   )

       I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit E Payment Terms and Schedule re: United States of America v. Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1956(a)(2)(A): International Promotional Money Laundering; 18 U.S.C. § 541: Entry of Goods Falsely Classified; 18 U.S.C. § 542: Entry of Goods by Means of False Statements; 18 U.S.C. § 545: Passing False and Fraudulent Papers Through Customhouse; 31 U.S.C. §§ 5331(a)(1), 5322(b): Failure to File Report of Currency Transaction in a Non-Financial Trade or Business; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. §§ 545, 981, and 982, 26 U.S.C. § 7301, 28 U.S.C. § 2451, 31 U.S.C. § 5317: Criminal Forfeiture] |
| AMBIANCE U.S.A., INC., and SANG BUM NOH, aka "Ed Noh," | |
| Defendants. | |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Structure of Ambiance U.S.A, Inc.

1.    Defendant AMBIANCE U.S.A., INC., doing business as "Ambiance Apparel" ("defendant AMBIANCE"), was incorporated in 1999

in the State of California, was located at 2465 East 23rd Street, Los Angeles, California.  Defendant AMBIANCE was a trade or business operating as an importer and exporter of textiles and garments from China, Vietnam, Cambodia, and elsewhere, with large customers including retail apparel chains, and smaller customers including individuals who owned small businesses, mostly in Mexico.

2.    Defendant SANG BUM NOH, also known as "Ed Noh" ("defendant NOH"), was the key manager and day-to-day operator of defendant AMBIANCE.

3.    Coconspirator 1 was a Certified Public Accountant employed by defendant AMBIANCE.

Importation Process of Foreign Goods

4.    The United States Department of Homeland Security, Customs and Border Protection ("CBP") was an agency responsible for administering and enforcing the customs laws of the United States and collecting the duties, taxes, and fees owed to the United States by the importers of merchandise.

5.    When a shipment of foreign goods reached the United States, the importer or consignee was required to file entry documents for the merchandise, which required specific information relating to the imported goods, such as an accurate description of the merchandise, the purchase price of the merchandise, the terms of sale, and all costs and services determined by law to be dutiable.  Entry documents could be filed electronically and included documents such as invoices, a packing list, a bill of lading, and CBP forms, such as Form 7501 (Entry Summary), which contained the final invoice purchase price.  CBP relied on entry documents to assess the proper duties and taxes for the imported merchandise.

Ownership of AMBIANCE and Tax Structure

6.    The Internal Revenue Service of the United States Treasury Department ("IRS") was an agency responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

7.    Defendant AMBIANCE was a subchapter S corporation.  As such, its gross sales and net income were reported on a Form 1120S, United States Income Tax Return for an S Corporation, which was filed with the IRS.  Taxable income generated by defendant AMBIANCE was reported on an IRS Schedule K-1 that was given to the taxpayer owner, defendant NOH's spouse.  The income "flowed through" the corporation to the owner without being taxed at the corporate level.  Instead, the net income was reported as such by the owner, defendant NOH's spouse, who was subject to federal income tax, on her individual income tax returns filed jointly with her husband, defendant NOH, on Form 1040, U.S. Individual Income Tax Return.

8.    Defendant AMBIANCE used an accounting software system known as "LAMBS" to record its sales, receipts of payment, and accounts receivable. Defendant AMBIANCE and Coconspirator 1 also used LAMBS to compile end-of-year information for tax purposes, which Coconspirator 1 forwarded to the accountants/tax preparers for defendant AMBIANCE to use in preparing defendant AMBIANCE's annual corporate tax returns and the individual joint tax return for defendant NOH.

Currency Reporting Requirements

9.    Under federal law, whenever a nonfinancial trade or business, such as defendant AMBIANCE, received over $10,000 in currency in one transaction or two or more related transactions that occur within one year, the business was required to file a notice

3

with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300") no later than 15 days after the transaction over $10,000.

10.    These Introductory Allegations are incorporated into each Count of this Information.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the United States Attorney, but no later than January 1, 2010, and continuing until on or about September 10, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, conspired with each other to:

1.   Knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, entering goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

2.   Knowingly and willfully enter and introduce goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542;

3.   Knowingly, willfully, and with the intent to defraud the United States, pass or cause to pass false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

4.   Knowingly cause defendant AMBIANCE to fail to file currency transaction reports as required by Title 31, United States Code, Section 5331(a), and the regulations promulgated thereunder, in

5

violation of Title 31, United States Code, Section 5324(b)(1) and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324(d)(2); and

5.     Knowingly and willfully make and subscribe tax returns, which were verified by a written declaration made under penalty of perjury, and which defendant NOH did not believe to be true and correct as to a material matter, in violation of Title 26, United States Code, Section 7206(1).

B.     MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

CUSTOMS FRAUD AND RELATED MONEY LAUNDERING

1.     Defendants AMBIANCE and NOH would order garments from manufacturers in China, Vietnam, Cambodia, and elsewhere for defendant AMBIANCE's stores in Los Angeles.

2.     At defendants AMBIANCE and NOH's direction, the manufacturers would prepare two invoices for each order: (a) one invoice that reflected a portion of the value that was later declared to CBP as the value of the imports; and (b) a second, supplemental invoice that reflected the remaining balance of the true cost of the garments to defendant AMBIANCE.

3.     Defendant AMBIANCE's employees, at the direction of defendant NOH, would forward the false, undervalued invoice to defendant AMBIANCE's customs broker, who would transmit the information to CBP as proof of the importation price of the

6

merchandise for purposes of determining the tariff due on the importation.

4. Defendants AMBIANCE and NOH would pay the amount on the false invoice to the manufacturer via letter of credit.

5. Defendants AMBIANCE and NOH would pay the remainder owed on the second, supplemental invoice to the manufacturer via wire transfer.

6. Defendants AMBIANCE and NOH would thereby underpay customs tariffs by reporting only a portion of the value of the merchandise it imported.

7. In total, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, submitted false invoices that resulted in an undervaluation of imported merchandise of approximately $82,669,853, which caused approximately $17,169,492.72 in unpaid tariffs owed to CBP by defendant AMBIANCE.

8. As part of this conspiracy, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, sent approximately 438 individual wire transfers from defendant AMBIANCE's bank accounts in Los Angeles, California to defendant AMBIANCE's suppliers' bank accounts outside of the United States, all of which were sent to promote the importation of the undervalued merchandise.

FAILURE TO FILE CURRENCY TRANSACTION REPORTS (FORM 8300s)

9. Defendant AMBIANCE would receive large amounts of United States currency exceeding $10,000 as payment for open invoices from its customers.

7

10.   Defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, would fail to file reports of currency transactions exceeding $10,000 to the Internal Revenue Service on a Form 8300 as required by law.

11.   Through this conspiracy, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, knowingly failed to file Form 8300s for approximately $11,103,123 worth of currency received from approximately 364 individual cash sales transactions that each exceeded $10,000.

FALSE STATEMENT IN FILED TAX RETURNS

12.   With defendant NOH's knowledge and approval, Coconspirator 1 would reduce the value of cash sales received by defendant AMBIANCE so that sales reported were lower than the true sales amounts received by defendant AMBIANCE.

13.   With defendant NOH's knowledge and approval, Coconspirator 1 would send false sales reports to defendant AMBIANCE's outside accountants for purposes of preparing defendant AMBIANCE's and defendant NOH's annual tax returns.

14.   Defendant NOH would thereby cause the outside accountants to omit the deleted cash sales from the schedule K-1, Shareholder's Share of Income, Deductions, and Credits, issued to the sole shareholder, defendant NOH's spouse.

15.   As a result, defendant NOH would knowingly fail to include the unreported sales on his tax returns and would sign, subscribe, swear to, and file those returns knowing that they omitted substantial amounts of income through cash sales and that the returns contained material misrepresentations about their total income.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1 through 10: On or about the following dates, defendants AMBIANCE and NOH caused the following amounts to be wire transferred from an account at a financial institution in the Central District of California, to an account at a financial institution located outside of the United States:

| OVERT ACT | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|---|
| 1 | 10/3/13 | $32,912.16 | East West Bank | Bank of China Deqing Branch, China | Zhejiang Cathaya Huameng Knitting Co., Ltd. |
| 2 | 10/4/13 | $228,614.40 | East West Bank | Bank of China Suzhou Branch, China | Suzhou Hengsheng I/E Co., Ltd. |
| 3 | 11/1/13 | $317,793.96 | East West Bank | Bank of China Hangzhou Binjiang sub-Branch, China | Hangzhou Xinyi Garments Co., Ltd. |
| 4 | 11/6/13 | $272,513.33 | East West Bank | Woori Bank-Seoul 203, Hoehyon Dong 1-GA,Chung-Gu Seoul, Korea | Alim Intertex Co., Ltd. |

9

| OVERT ACT | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|---|
| 5 | 11/7/13 | $230,288.25 | East West Bank | Bank of Communications Taizhou Branch, China | Jiangsu Weina Fashion Co., Ltd |
| 6 | 11/12/13 | $165,720.84 | East West Bank | Shanghai Pudong Development Bank Suzhou, China | Jiangyin Hongxin Garment Making Co., Ltd. |
| 7 | 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |
| 8 | 11/15/13 | $265,085.45 | East West Bank | Hongkong and Shanghai Banking Hong Kong | Super Wonder World Wide Ltd. |
| 9 | 4/21/14 | $185,452.68 | HSBC | HSBC Hong Kong | Super Wonder World Wide Ltd. |
| 10 | 6/5/14 | $55,072.08 | HSBC | One Bank Limited 97, Gulshan Avenue Dhaka Bangladesh | Chunji Knit Ltd. |

Overt Act Nos. 11 through 20:  On or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, knowingly and willfully entered and introduced imported merchandise, namely, garments from China, into the commerce of the United States by means of materially false and fraudulent invoices and statements, without reasonable cause to

10

believe the truth of such statements.  Specifically, defendants AMBIANCE and NOH stated, and caused to be stated, that the following false and fraudulent invoices represented the total value of the merchandise imported into the United States, whereas, in fact, as defendants AMBIANCE and NOH then knew, the false invoices undervalued the merchandise imported into the United States in amounts as follows:

| OVERT ACT | ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|---|---|
| 11 | 9/3/2013 | HE801385544 | $49,368 | $32,912.16 | $9,281.23 |
| 12 | 9/17/2013 | HE801388571 | $77,340 | $76,865.76 | $24,597.04 |
| 13 | 9/22/2013 | HE801390247 | $84,313 | $56,208.36 | $8,685.09 |
| 14 | 9/26/2013 | HE801390684 | $310,034 | $205,587.12 | $32,893.94 |
| 15 | 10/7/2013 | HE801393688 | $168,470 | $72,201.60 | $20,360.85 |
| 16 | 10/11/2013 | HE801394082 | $148,631 | $99,420.96 | $23,227.71 |
| 17 | 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |
| 18 | 10/20/2013 | HE801396525 | $250,609 | $167,072.64 | $44,942.54 |
| 19 | 4/9/2014 | HE801439994 | $205,094 | $87,897.60 | $9,492.94 |
| 20 | 6/25/2014 | HE801457814 | $128,689 | $55,072.08 | $15,530.33 |

Overt Act Nos. 21 through 30:  On or about the following dates, defendants AMBIANCE and NOH, together with others known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below:

11

| OVERT ACT | ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|---|
| 21 | 9/3/2013 | Forms 7501 and 3461, bearing entry number HE801385544, falsely declaring that total entered value of the merchandise was $49,368 instead of the true value paid of $82,280.40. |
| 22 | 9/17/2013 | Forms 7501 and 3461, bearing entry number HE801388571, falsely declaring that total entered value of the merchandise was $77,340 instead of the true value paid of $154,206. |
| 23 | 9/22/2013 | Forms 7501 and 3461, bearing entry number HE801390247, falsely declaring that total entered value of the merchandise was $84,313 instead of the true value paid of $140,520.90. |
| 24 | 9/26/2013 | Forms 7501 and 3461, bearing entry number HE801390684, falsely declaring that total entered value of the merchandise was $310,034 instead of the true value paid of $515,621.52. |
| 25 | 10/7/2013 | Forms 7501 and 3461, bearing entry number HE801393688, falsely declaring that total entered value of the merchandise was $168,470 instead of the true value paid of $240,672. |
| 26 | 10/11/2013 | Forms 7501 and 3461, bearing entry number HE801394082, falsely declaring that total entered value of the merchandise was $148,631 instead of the true value paid of $248,052. |
| 27 | 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. |
| 28 | 10/20/2013 | Forms 7501 and 3461, bearing entry number HE801396525, falsely declaring that total entered value of the merchandise was $139,992 |

| OVERT ACT | ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|---|
| | | instead of the true value paid of $232,956. |
| 29 | 4/9/2014 | Forms 7501 and 3461, bearing entry number HE801439994, falsely declaring that total entered value of the merchandise was $205,094 instead of the true value paid of $323,052. |
| 30 | 6/25/2014 | Forms 7501 and 3461, bearing entry number HE801457814, falsely declaring that total entered value of the merchandise was $128,689 instead of the true value paid of $183,760.92. |

Overt Act Nos. 31 through 36:  On or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, received the following amounts of currency over $10,000 without filing reports of currency transactions:

| OVERT ACT | PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|---|
| 31 | 11/15/2012 | $14,193.00 | 67779 | A.R. |
| 32 | 11/21/2012 | $17,610.00 | 68691 | A.R. |
| 33 | 1/11/2013 | $33,900.00 | 74642 | A.R. |
| 34 | 1/24/2013 | $19,344.00 | 76232 | A.R. |
| 35 | 3/15/2013 | $20,535.00 | 83280 | A.R. |
| 36 | 4/5/2013 | $34,915.00 | 86452 | A.R. |

Overt Act No. 37:   In May 2012, with defendant NOH's knowledge and approval, Coconspirator 1 created a false sales journal for 2011, omitting approximately $13,422,908 in cash sales, and reporting instead total store sales of only $22,477,743.29, instead of the correct total of $36,439,102.

13

Overt Act No. 38:  On May 9, 2012, defendant NOH caused this falsified 2011 sales journal to be sent to outside accountants for defendant AMBIANCE, to be used to prepare financial statements and tax returns for 2011.

Overt Act No. 39:  On October 8, 2012, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2011.

Overt Act No. 40:  In June 2013, with defendant NOH's knowledge, Coconspirator 1 created a false sales journal for 2012, omitting approximately $6,662,641 in cash sales, and reporting instead total store sales of only $8,477,795.77 instead of the true and complete sales report amount of $15,141,772.87.

Overt Act No. 41:  On June 4, 2013, defendant NOH caused the falsified 2012 sales journal to be sent to outside accountants for defendant AMBIANCE, to be used to prepare financial statements and tax returns for 2012.

Overt Act No. 42:  On October 9, 2013, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2012.

COUNT TWO

[18 U.S.C. § 1956(a)(2)(A)]

[DEFENDANT AMBIANCE]

On or about November 14, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. knowingly transferred monetary instruments and funds, namely, $278,262.79, from an account at a financial institution in the Central District of California, to an account at a financial institution outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely:

1. Entry of goods falsely classified as to value and payment of less than the amount of duty legally due, in violation of Title 18, United States Code, Section 541;

2. Entry of goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542; and

3. Passing false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

through the following transaction:

| DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|
| 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |

15

COUNT THREE

[18 U.S.C. §§ 541, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, knowingly effected, and willfully caused to be effected, the entry of goods and merchandise, upon a false classification as to their value and by payment of less than the amount of duty legally due, namely:

| ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|---|
| 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |

16

COUNT FOUR

[18 U.S.C. §§ 542, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, entered and introduced, and willfully caused to be entered and introduced, imported merchandise, namely, garments from China, into the commerce of the United States by means of materially false and fraudulent invoices and statements, without reasonable cause to believe the truth of such statements.  Specifically, defendant AMBIANCE stated, and willfully caused to be stated, that the false and fraudulent invoice represented the total value of the merchandise imported into the United States, whereas, in fact, as defendant AMBIANCE then knew and believed, the false invoice undervalued the merchandise imported into the United States in the amount as follows:

| ENTRY DATE | ENTRY NO. | DECLARED VALUE (FALSE INVOICE) | UNDER-VALUATION (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|---|
| 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |

17

COUNT FIVE

[18 U.S.C. §§ 545, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below, in order to influence action by the United States:

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|
| 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. |

18

COUNTS SIX THROUGH EIGHT

[31 U.S.C. §§ 5331(a), 5322(b)]

[DEFENDANT AMBIANCE]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. knowingly and willfully failed to file a report of domestic currency transaction over $10,000 in a trade or business, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| COUNT | PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|---|
| SIX | 10/30/2013 | $53,010.00 | 104558 | A.R. |
| SEVEN | 11/26/2013 | $27,930.00 | 122133 | A.R. |
| EIGHT | 04/15/2014 | $33,000.00 | 136869 | A.R. |

COUNT NINE

[26 U.S.C. § 7206(1)]

[DEFENDANT NOH]

On or about October 8, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant SANG BUM NOH, also known as "Ed Noh," a resident of Los Angeles County, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2011, which was prepared and signed in the Central District of California, filed with the Internal Revenue Service, and which defendant NOH verified as true, correct, and complete by a written declaration made under penalty of perjury, and which tax return defendant NOH did not believe to be true and correct as to every material matter, in that the return falsely omitted $13,422,908 in taxable income from Ambiance, U.S.A., Inc. to defendant NOH and his spouse, when, in fact, as defendant NOH then knew, the amount of taxable income was substantially higher.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Information.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

21

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in any such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

22

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 982 and 545]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Three through Five of this Information.

2.    The defendant, if so convicted, shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b)  Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been

24

transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

25

FORFEITURE ALLEGATION FOUR

[31 U.S.C. § 5317]

1.  Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Six through Eight of this Information.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All property, real or personal, involved in any such offense and any property traceable thereto; and

(b)  To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p) and Title 31, United States Code, Section 5317(c)(1)(B), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding, or any portion thereof; (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

26

FORFEITURE ALLEGATION FIVE

[26 U.S.C. § 7301]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Nine of this Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property sold or removed by the convicted defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or

27

draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f)  To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//
//
//
//
//
//
//
//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, &
Racketeering Section

LUCY B. JENNINGS
Assistant United States Attorney
International Narcotics,
Money Laundering, &
Racketeering Section

# EXHIBIT B

**EXHIBIT B**

**STATEMENT OF FACTS**

Defendant acknowledges that if this case proceeded to trial, the United States would prove the following facts, among others, which defendant acknowledges to be true, beyond a reasonable doubt:

## I.   BACKGROUND OF AMBIANCE

1.   On or about October 21, 1999, Ambiance, U.S.A., Inc. was incorporated in the State of California.  On or about February 8, 2012, Apparel Line U.S.A., Inc. was incorporated in the State of California.  For all times relevant to this statement of facts, both Ambiance U.S.A., Inc., and Apparel Line U.S.A., Inc. were doing business as "Ambiance Apparel," and located at 2465 East 23rd Street, Los Angeles, California 90058 (hereinafter, collectively, "AMBIANCE").

2.   AMBIANCE was a garment importation and wholesale distribution business that purchased goods abroad, mostly from China, and distributed those goods to businesses in the Los Angeles area and elsewhere.

3.   Defendant SANG BUM NOH, also known as "Ed Noh" ("defendant NOH") was the owner and manager of AMBIANCE and was responsible for running the business on a day-to-day basis, which included placing orders with AMBIANCE's suppliers, managing shipment of such orders, and directing payments to suppliers.

1

## II. CUSTOMS FRAUD AND RELATED MONEY LAUNDERING

4.   At all times relevant for these statement of facts, the United States Department of Homeland Security, Customs and Border Protection ("CBP") was an agency responsible for administering and enforcing the customs laws of the United States and collecting the duties, taxes, and fees owed to the United States by the importers of merchandise.  When a shipment of foreign goods reached the United States, the importer or consignee was required to file entry documents for the merchandise, which provide specific information relating to the imported goods, such as an accurate description of the merchandise, the invoice purchase price of the merchandise, the terms of sale, and all costs and services determined by law to be dutiable.  CBP relied on entry documents to assess the proper duties and taxes for the imported merchandise.

5.   Beginning on a date unknown, and continuing until September 10, 2014, in Los Angeles County, within the Central District of California, AMBIANCE, defendant NOH, and others known and unknown, engaged in a scheme to commit customs fraud and launder money by submitting false and fraudulent invoices that reflected only a portion of the merchandise's true importation value to CBP.  These partial invoices were submitted at defendant NOH's direction and with his knowledge in order to avoid paying the full amount of tariffs owed to the United States by AMBIANCE for its importations.  This scheme worked as follows:

2

a.    AMBIANCE and defendant NOH would order garments from manufacturers in China, Vietnam, Cambodia, and elsewhere.

b.    At defendant NOH's direction, the manufacturers would prepare two invoices for each order:

i.    One invoice that reflected only a portion of the value of the order, usually 60 to 70 percent of the overall price, which was later provided to CBP to determine the value of the imports ("Invoice #1").  Invoice #1 was paid by letter of credit and would reflect lower unit prices for the imported goods, thereby supporting a lower overall total value for those imports.

ii.    A second, invoice, to be paid by wire transfer, that reflected the remaining balance of the true cost of the shipment to AMBIANCE (Invoice #2").

c.    Through this split invoicing process (Invoice #1 and Invoice #2), AMBIANCE was able to conceal the true amount of the imports on which AMBIANCE was required to pay tariffs.

d.    At defendant NOH's direction, the partial invoice, Invoice #1, would be sent to AMBIANCE's customs broker, who would transmit the information to CBP as proof of the merchandise's importation price for purposes of determining the tariff due on the importation.  By reporting only a portion of the true value of its imports, AMBIANCE and defendant NOH artificially reduced the value of the imports used to calculate the tariffs owed by AMBIANCE for this merchandise.

e.    To assist AMBIANCE's employees in properly calculating the amount by which to reduce each invoice that was

3

sent to CBP (by reducing the unit prices of each item of merchandise), AMBIANCE and defendant NOH maintained an "Undervalue Calculator" on its computer systems, which allowed AMBIANCE employees to falsify the value of the importations and the amount of duty owed on those importations.

f.   At defendant NOH's direction, AMBIANCE paid its suppliers the amount listed on Invoice #1 through a Letter of Credit, which was referenced in the entry documents provided to CBP.   Later, defendant NOH authorized a separate wire transfer to be sent to the supplier to cover the remaining costs owed for the garments as outlined in Invoice #2.

6.   From January 1, 2010, through September 10, 2014, AMBIANCE knowingly undervalued importations into the United States.   In total, this scheme resulted in the knowing undervaluation of imports by approximately $82,669,853.00 and approximately $17,169,492.72 in unpaid tariffs/loss of revenue owed to CBP by AMBIANCE.   After interest accrued through September 10, 2014, which totaled $1,251,950.69, CBP's resulting loss was $18,421,443.41.

7.   Through this scheme, AMBIANCE and defendant NOH knowingly, willfully, and with the intent to defraud the United States: (1) caused garments to be entered in the United States based on a false classification as to the garments' value and by payment of less than the amount of duty owed; (2) introduced garments into the commerce of the United States by means of materially false and fraudulent invoices; and (3) smuggled goods

4

into the United States by passing such false invoices through a United States customhouse.

8.   On or about the following dates, AMBIANCE and defendant NOH caused the following shipments to be introduced into the United States by means of false and fraudulent invoices, which resulted in the underpayment of duties owed to the United States:

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|
| 9/3/2013 | Forms 7501 and 3461, bearing entry number HE801385544, falsely declaring that total entered value of the merchandise was $49,368 instead of the true value paid of $82,280. | $32,912.16 | $9,281.23 |
| 9/17/2013 | Forms 7501 and 3461, bearing entry number HE801388571, falsely declaring that total entered value of the merchandise was $77,340 instead of the true value paid of $154,206. | $76,865.76 | $24,597.04 |
| 9/22/2013 | Forms 7501 and 3461, bearing entry number HE801390247, falsely declaring that total entered value of the merchandise was $84,313 instead of the true value paid of $140,520. | $56,208.36 | $8,685.09 |
| 9/26/2013 | Forms 7501 and 3461, bearing entry number HE801390684, falsely | $205,587.12 | $32,893.94 |

5

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|
| | declaring that total entered value of the merchandise was $310,034 instead of the true value paid of $515,621. | | |
| 10/7/2013 | Forms 7501 and 3461, bearing entry number HE801393688, falsely declaring that total entered value of the merchandise was $168,470 instead of the true value paid of $240,672. | $72,201.60 | $20,360.85 |
| 10/11/2013 | Forms 7501 and 3461, bearing entry number HE801394082, falsely declaring that total entered value of the merchandise was $148,631 instead of the true value paid of $248,052. | $99,420.96 | $23,227.71 |
| 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. | $92,964.00 | $29,748.48 |
| 10/20/2013 | Forms 7501 and 3461, bearing entry number HE801396525, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. | $167,072.64 | $44,942.54 |
| 4/9/2014 | Forms 7501 and 3461, bearing entry number HE801439994, falsely | $87,897.60 | $9,492.94 |

6

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|
| | declaring that total entered value of the merchandise was $205,094 instead of the true value paid of $323,052. | | |
| 6/25/2014 | Forms 7501 and 3461, bearing entry number HE801457814, falsely declaring that total entered value of the merchandise was $128,689 instead of the true value paid of $183,760. | $55,072.08 | $15,530.33 |

9.   AMBIANCE and defendant NOH promoted this scheme by wire transferring payment for the balances of Invoice #2 (for each order) to the suppliers.  Specifically, AMBIANCE and defendant NOH caused approximately 438 individual wire transfers to be sent from AMBIANCE's bank accounts in Los Angeles, California to AMBIANCE's suppliers' bank accounts in China and elsewhere.  In total, AMBIANCE and defendant NOH transferred a total of $82,669,853.63 from AMBIANCE's bank accounts in the United States to AMBIANCE's suppliers' bank accounts located outside of the United States, which corresponded to the undervalued amount of the imported merchandise.

10.  On or about the following dates, AMBIANCE and defendant NOH caused the following amount to be wire transferred from an account at a financial institution in Los Angeles,

7

California, to an account at a financial institution outside of the United States:

| DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|
| 10/3/13 | $32,912.16 | East West Bank | Bank of China Deqing Branch, China | Zhejiang Cathaya Huameng Knitting Co., Ltd. |
| 10/4/13 | $228,614.40 | East West Bank | Bank of China Suzhou Branch, China | Suzhou Hengsheng I/E Co., Ltd. |
| 11/1/13 | $317,793.96 | East West Bank | Bank of China Hangzhou Binjiang sub-Branch, China | Hangzhou Xinyi Garments Co., Ltd. |
| 11/6/13 | $272,513.33 | East West Bank | Woori Bank-Seoul 203, Hoehyon Dong 1-GA,Chung-Gu Seoul,  Korea | Alim Intertex Co., Ltd. |
| 11/7/13 | $230,288.25 | East West Bank | Bank of Communications Taizhou Branch, China | Jiangsu Weina Fashion Co., Ltd |
| 11/12/13 | $165,720.84 | East West Bank | Shanghai Pudong Development Bank Suzhou, China | Jiangyin Hongxin Garment Making Co., Ltd. |
| 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |
| 11/15/13 | $265,085.45 | East West Bank | Hongkong and Shanghai Banking Hong Kong | Super Wonder World Wide Ltd. |
| 4/21/14 | $185,452.68 | HSBC | HSBC Hong Kong | Super Wonder World Wide Ltd. |

8

| 6/5/14 | $55,072.08 | HSBC | One Bank Limited 97, Gulshan Avenue Dhaka Bangladesh | Chunji Knit Ltd. |
|--------|-----------|------|------------------------------------------------------|------------------|

### III. CASH SALES

11.  Beginning on a date unknown, and continuing to at least July 2014, in Los Angeles County, within the Central District of California, AMBIANCE, defendant NOH, and others known and unknown, engaged in a scheme to conceal sales of AMBIANCE merchandise paid in cash.  As part of the scheme, AMBIANCE and defendant NOH: (1) failed to file reports of the receipt of cash over $10,000 in a non-financial trade or business; (2) concealed cash sales through a method of decreasing the sales recorded in the official accounting records of the business; and (3) failed to report income generated from cash sales to external accountants, which resulted in fraudulent tax returns filed by AMBIANCE and defendant NOH.

### A.    FAILURE TO REPORT CASH SALES OVER $10,000

12.  Under federal law, whenever a non-financial trade or business, such as AMBIANCE, receives over $10,000 in currency in one transaction or in two or more related transactions that occur within one year, the business must file a notice with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300").  This form must be filed no later than 15 days after the transaction over $10,000.  In July 2012, defendant NOH was

9

notified of the requirement to file the Form 8300 by Ambiance's external accountants.  Defendant NOH admits that he did understand those requirements no later than July 2012.

13.  In May 2013, defendant NOH was notified again of the requirement to file the Form 8300.  Specifically, in May 2013, defendant NOH met with Department of Homeland Security Special Agents at AMBIANCE's store and was notified that AMBIANCE was required file Form 8300 for all currency transactions exceeding $10,000.  During this meeting, defendant NOH signed an acknowledgement of law form as the owner of AMBIANCE, indicating that he understood the reporting requirements.

14.  Beginning no later than July 2012, and continuing to at least July 2014, AMBIANCE employees received United States currency exceeding $10,000 per transaction as payment for open invoices of AMBIANCE's customers.  Specifically, between July 3, 2012 and July 2, 2014, AMBIANCE received approximately 364 payments of cash exceeding $10,000 for each transaction. Defendant NOH knew about at least some of these transactions.

15.  AMBIANCE, defendant NOH, together with others known and unknown, failed to file or cause the filing of reports of currency transactions for a non-financial trade or business (Form 8300) for  of these 364 transactions.  In total, these sales exceeded $11,103,122 worth of currency received by AMBIANCE.

16.  As examples, on or about the following dates, AMBIANCE and its employees received currency over $10,000 as payment for customer orders but failed to file reports of currency

10

transactions:

| PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|
| 11/15/2012 | $14,193.00 | 67779 | A.R. |
| 11/21/2012 | $17,610.00 | 68691 | A.R. |
| 1/11/2013 | $33,900.00 | 74642 | A.R. |
| 1/24/2013 | $19,344.00 | 76232 | A.R. |
| 3/15/2013 | $20,535.00 | 83280 | A.R. |
| 4/5/2013 | $34,915.00 | 86452 | A.R. |

**B.    UNDERREPORTED CASH SALES AND CORRESPONDING FALSE TAX RETURNS**

17.   Separate from its factory sales to large stores, AMBIANCE sold merchandise to small businesses and individual "walk-in" customers from its own storefront.  AMBIANCE recorded those store sales in different ways depending upon the type of payment received.  Specifically, until June 2012, with the knowledge of defendant NOH, AMBIANCE separated its sales records into two separate sequences: "Store 1" and "Store 2."  "Store 1" was used to record sales to small businesses paid in cash, credit card, or wire transfer, while nearly all of "Store 2" invoices were paid in cash.

18.   Defendant NOH received daily reports of sales activity, including cash sales from the store.  Each daily report showed the previous day's true factory and store sales, month-to-date sales balances, year-to-date balances, bank account balances, and the prior day's bank deposits.

11

19. AMBIANCE used an accounting software system known as "LAMBS" to record its sales, receipts of payment, and accounts receivable. Until June 2012, AMBIANCE used LAMBS software to compile end-of year information for tax purposes, which was forwarded to the accountants/tax preparers for AMBIANCE to use in preparing AMBIANCE's annual corporate tax returns and the individual joint tax return for defendant NOH and his spouse.

20. AMBIANCE was a subchapter S corporation. As such, its gross sales and net income were reported on a Form 1120S, United States Income Tax Return for an S Corporation, which was filed with the Internal Revenue Service of the United States Treasury Department ("IRS"). Taxable income generated by AMBIANCE was reported on an IRS Schedule K-1 that was given to AMBIANCE's owner. The income "flowed through" the corporation to the owner without being taxed at the corporate level. Instead, the net income was reported as such by AMBIANCE's owners, defendant NOH and his spouse, on their jointly filed federal income tax returns (Form 1040).

21. From at least May 2012 through at least October 2013, in Los Angeles County, within the Central District of California, defendant NOH knowingly and intentionally conspired and agreed with others to defraud the United States by deceitful and dishonest means, for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely, the IRS, in the ascertainment, computation, assessment, and collection of the revenue through taxes owed. The scheme worked as follows:

12

a.    When reporting annual sales figures to AMBIANCE's outside accountants, an AMBIANCE employee was instructed, with defendant NOH's knowledge, to omit all "Store 2" sales from the records.  The employee was also instructed, with defendant NOH's knowledge, to reduce the value of some "Store 1" cash sales so that reported figures were lower than the true sales amounts.

b.    With defendant NOH's knowledge, those reduced figures were sent to AMBIANCE's outside accountants for the purpose of preparing the tax returns for AMBIANCE, as well as a jointly filed individual tax return for defendant NOH and his spouse.  By providing such inaccurate information, defendant NOH caused the outside accountants to omit the deleted sales from the schedule K-1, Shareholder's Share of Income, Deductions, and Credits, which was issued to the sole shareholder and incorporated into defendant NOH's jointly filed individual tax return.

c.    As a result, defendant NOH, knowingly failed to include the unreported sales on his tax returns and filed those returns knowing of the omitted income.  In so doing, defendant NOH knew that the returns contained material misrepresentations about his total income.

### 1.    2011 Tax Returns

22.  In May 2012, the AMBIANCE employee created a false sales journal for AMBIANCE's 2011 sales, which omitted approximately $13,422,908 in cash sales and reported total sales

13

for the store of only $22,477,743 (compared to the correct total of $36,439,102).

23.  The total amount of unreported cash sales for 2011 was $13,422,908.

24.  On October 8, 2012, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2011.  In so doing, defendant NOH knowingly and willfully made a materially false statement. Specifically, defendant NOH knew that the return falsely omitted $13,422,908 in taxable income from AMBIANCE to defendant NOH and his spouse, and specifically intended to avoid taxes with this omission.

**2.    2012 Tax Returns**

25.  The same process was followed again when preparing AMBIANCE and defendant NOH's 2012 tax returns.

26.  In June 2013, an AMBIANCE employee, with defendant NOH's knowledge, created create a false sales journal for 2012, which omitted approximately $6,548,442 in cash sales and reported a total store sales of only $8,477,795.77 (compared to the true and complete sales report amount of $15,141,772.87).

27.  The total amount of unreported cash sales for 2012 was $6,548,442.

28.  On October 9, 2013, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2012.  In so doing, defendant NOH knowingly and willfully made a materially false statement. Specifically, defendant NOH knew that the return falsely omitted

14

$6,548,422 in taxable income from AMBIANCE to defendant NOH and his spouse, and specifically intended to avoid taxes with this omission.

# EXHIBIT E

**EXHIBIT E**

This Exhibit sets out the agreed-upon sums and payment schedule for forfeiture and restitution amounts owed pursuant to the plea agreements between Ambiance U.S.A., Inc. ("Ambiance") and the United States Attorney's Office for the Central District of California ("USAO") and between Sang Bum Noh, also known as "Ed Noh," and the USAO.  This exhibit is intended to supplement the plea agreements and is not intended to be a complete recitation of all relevant terms.

**Forfeiture**: Pursuant to Federal Rule of Criminal Procedure 32.2, the money judgment of forfeiture, for which Ed Noh and Ambiance are jointly and severally liable, is in the amount of $81,564,856.08 (the "Forfeiture Amount").

**Fine:** The parties agree that in light of the Forfeiture Amount, no fine shall be imposed.

**Restitution:** The total restitution amount, for which Ed Noh and Ambiance are jointly and severally liable, is $35,227,855.45 (the "Restitution Amount").  This Restitution Amount consists of $16,806,412.04 due to the Internal Revenue Service in unpaid taxes, penalties, and interest (the "IRS Restitution Amount") and $18,421,443.41 due to the Department of Homeland Security/Customs and Border Protection for lost revenue and interest (the "DHS/CBP Restitution Amount").

**Payment Schedule:** Payment of the Forfeiture Amount and the Restitution Amount shall be as follows:

The Seized Funds: Ed Noh and Ambiance agree that $35,227,855.45 of the funds seized by law enforcement officials on September 20, 2014, shall be applied to the Restitution Amount.  Upon

sentencing, the government will transmit $35,227,855.45 to the Clerk of the Court to be applied to the outstanding restitution amount.  Ed Noh and Ambiance agree to forfeit the remaining $1,104,997.55 seized on September 20, 2014, and that those funds were derived from or acquired as a result of, or used to facilitate the commission of, and involved in the illegal activity to which defendants are pleading guilty.  Ed Noh and Ambiance are jointly and severally liable for both the Forfeiture Amount and the Restitution Amount in full.

Remaining Payments: The money judgment of forfeiture (referred to in the plea agreement) shall be payable to the United States on the following schedule:

1) $10,000,000.00, due and payable 90 days after the sentencing of Ed Noh or Ambiance, whichever is later.

2) The remaining $71,564,856.08 to be paid in five equal installments of $14,312,971.22 each, with the first payment due and payable one year after the sentencing of Ed Noh or Ambiance, whichever is later (the "First Payment Date"), and the remaining four installments each due one year from the First Payment Date for the remaining four years.

**Inability to Pay:** If at any time during the proposed payment schedule, Ed Noh and Ambiance are unable to make a payment in accordance with the schedule outlined above, they shall notify the USAO by certified mail no later than 120 days prior to the date such payment is due.  Such notice shall be provided to:

United States Attorney's Office

Chief of the Criminal Division

2

312 N. Spring Street, Suite 1200

Los Angeles, CA 90012

Upon such notification, Ed Noh and Ambiance will:

1) Within 10 days of a request by the USAO, provide the USAO with credit report on Ed Noh and Annie Noh.

2) Upon request by the USAO, consent and make available – to the USAO and agents working on its behalf – any and all financial documents and related information pertaining to Ambiance, Ed Noh, and Annie Noh.

3) Complete updated Financial Disclosure Statements (provided by the USAO) with respect to Ed Noh and Ambiance and deliver the updated, signed, and dated statements to the USAO no later than seven (7) days after notifying the USAO.  Copies of the signed statements, along with all required supporting documentation, shall be mailed to:

United States Attorney's Office

Chief of the Criminal Division

312 N. Spring Street, Suite 1200

Los Angeles, CA 90012

4) No later than seven (7) days after notifying the USAO, disclose to the USAO any and all property, real or personal, in which Ed Noh, Annie Noh, or Ambiance have any ownership interest.

To aid the USAO in assessing defendants' ability to pay in accordance with the payment schedule, Ed Noh and Ambiance agree that the USAO may request discovery in accordance with Federal Rule of Civil Procedure 69(a)(2) and that such rule applies to the financial

3

obligations as set forth in the payment schedule.

If the USAO determines that defendants are unable to pay in accordance with the schedule outlined above, the parties will notify the Court and request a modified payment schedule.  If the USAO identifies substitute assets in which Ambiance, Ed Noh, and/or Annie Noh have an ownership interest, the USAO may ask the Court allow such assets to be seized and forfeited to satisfy the judgment.

4